# UNITED STATES DISTRICT COURT
### for the
### Eastern District of Wisconsin

CLERK'S OFFICE
A TRUE COPY
Oct 31, 2024
s/ D. Olszewski
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )
)
the person of N-namdi Williams and the cellular )
telephone assigned (414) 759-8761 )
)

Case No.   24   MJ   241

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment A,

located in the _____Eastern_____ District of _____Wisconsin_____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841(a)(1), 843, and 846; 18 U.S.C. § 1503 | distribution of controlled substances; use of a communication facility to facilitate distribution of controlled substances; conspiracy to distribute controlled substances; obstruction of due administration of justice |

The application is based on these facts:

See attached Affidavit.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Jacob A. Dettmering, FBI Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by

_____telephone_____ *(specify reliable electronic means)*.

Date: _____10/31/2024_____

_____
*Judge's signature*

City and state:   Milwaukee, WI

Honorable William E. Duffin, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF AN APPLICATION
## UNDER RULE 41 FOR A WARRANT TO SEARCH AND SEIZE

I, Jacob Dettmering, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.  I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the search of N-namdi Williams ("N-namdi"), as described in Attachment A, for evidence of the SUBJECT OFFENSES described below, including but not limited to the cellular device assigned call number 414.759.8761 (the "Target Device"), described in Attachments A and B. I further request that the contemplated search warrant authorize the search of the Target Device for evidence more fully described in Attachment B.

2.  I am a Special Agent of the Federal Bureau of Investigation ("FBI") currently and have been since January 7, 2018.  I was assigned to the FBI Capitol Area Gang Task Force (CAGTF) in Baton Rouge, Louisiana, from June 15, 2018, to April 1, 2020.  Since April 1, 2020, I have been assigned as the Task Force Coordinator for the Milwaukee Area Safe Streets Task Force (MASSTF).  Since 2018, I have investigated violations of federal law, directed drug and street gang investigations, obtained and executed search and arrest warrants related to the distribution of illegal narcotics, and debriefed confidential informants and cooperating defendants. I am empowered by the law to conduct investigations of, and to make arrests for, federal felonies. I have also participated in investigations involving the interception of wire communications.

3.  As such, I am an investigative or law enforcement agent of the United States authorized under Title 18, United States Code, Section 3051, that is, an officer of the United States

who is empowered by law to conduct investigations, to make arrests, and to collect evidence for various violations of federal law.

4. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents, witnesses, and agencies. This Affidavit is intended to show merely that there is sufficient probable cause for the requested warrant. It does not set forth all of my knowledge, or the knowledge of others, about this matter.

5. Based on my training and experience and the facts as set forth in this Affidavit, I submit that there is probable cause to believe that N-namdi and other have committed violations of 21 U.S.C. §§ 841(a)(1), 843, and 846 (distribution of controlled substances; use of a communication facility to facilitate distribution of controlled substances; and conspiracy to distribute controlled substances), and 18 U.S.C. § 1503 (obstruction of due administration of justice) (collectively, the "SUBJECT OFFENSES") and that evidence of such crimes is likely to be found on the Target Device described in Attachment B. As a result, there is probable cause to search N-namdi's person, further described in Attachment A, for the Target Device described in Attachment B, and to further search the Target Device described in Attachment B for evidence of the SUBJECT OFFENSES.

## PROBABLE CAUSE

6. On October 1, 2024, an arrest warrant was issued for Dominique WILLIAMS by a United States Magistrate Judge for the Eastern District of Wisconsin, pursuant to a complaint captioned 24-MJ-187. On that same date, a search warrant (captioned 24-MJ-192) was issued for 1702 W Capitol Drive, Milwaukee, Wisconsin, N-Namdi's primary residence. The affidavits submitted in support of both documents are incorporated here by reference.

7.     As more fully described in the affidavits previously incorporated here, law enforcement believes Dominque WILLIAMS leads a drug trafficking organization ("DTO") based in the Eastern District of Wisconsin, and that his DTO utilizes 1702 W Capitol Drive, Milwaukee, Wisconsin, as part of its illicit trade.

8.     On October 2, 2024, law enforcement officers attempted to execute the search warrant at 1702 W Capitol Drive, Milwaukee, WI. They established surveillance around 5:30 AM (CST), anticipating that the search would begin at 6:00 AM. At approximately 5:59 AM, they observed a white Chevy van, known to have been utilized by N-namdi in the past, leave 1702 W Capitol Drive, Milwaukee, WI. The vehicle was originally traveling at an ordinary rate of speed, but as it proceeded away from the residence, the driver – believed to be N-namdi– would likely have been able to see law enforcement en route to the residence, driving distinctive vehicles (including their BearCat, tinted sedans, and the entry-team vehicle). At that point, the white van, believed to be driven by N-namdi, accelerated at a high rate of speed. Law enforcement elected to let the van drive away and execute the warrant at 1702 W Capitol Drive, Milwaukee, WI, where they recovered documents and records believed to be reflective of the DTO's activities. On this same morning of October 2, 2024, law enforcement has searched other locations associated with the DTO, recovering substantial quantities of controlled substances and firearms.

9.     Law enforcement also noted, via previously authorized electronic surveillance, that N-namdi, shortly after his suspected flight from law enforcement, attempted to contact his son Dominique WILLIAMS (who was in California, which is on Pacific Standard Time and therefore two hours ahead) multiple times, using the Target Device. More specifically:

- N-namdi called Dominique WILLIAMS at approximately 6:06 AM (CST). It appears they did not speak, as the call duration is four seconds.

- N-namdi then called Dominique WILLIAMS again, at approximately 6:07 AM (CST). It appears they spoke, as the call duration is one minute and forty-nine seconds. Shortly after this point, location data associated with Dominique WILLIAMS' phone reflects that he and his device left their present location and began to travel at a very high rate of speed, even though it was only shortly after 4 AM at his location. Based on the duration and context, law enforcement believes that during this call, N-namdi advised Domnique WILLIAMS that law enforcement was attempting to execute search warrants, and he should flee.

- N-namdi next called Dominique WILLIAMS at approximately 7:45 AM (CST). It appears they spoke, as the call duration three minutes and thirty-three seconds.

10. On October 2, 2024, at approximately 4:00pm, N-namdi WILLIAMS pulled out $50,000 from the bank account associated with Williams Elite Logistics, LLC, in which N-namdi and Dominique WILLIAMS are both registered agents. N-namdi converted the money into a cashier check made payable to "Epoch Beauty MKE". The registered Agent for Epoch Beauty MKE is Coranette STEPERSON, residing at 7150 N Range Road, Milwaukee, WI. Case Agents reference law enforcement databases and found Epoch Beauty MKE was administratively dissolved in 2020.

11. Investigators believe, based on their investigation to date, that N-namdi and Coranette STEPHERSON are dating. Investigators have noted the two of them together on occasion through physical surveillance and have noted N-namdi's vehicle at STEPHERSON's

house overnight on numerous occasions.  Additionally, STEPHERSON's vehicle, a dark colored BMW SUV X5, bearing WI plate ABR-2538, has been located by surveillance at 1702 W Capitol Drive, Milwaukee, WI.

12.     Additionally, N-namdi pulled out an additional $25,000 from the business account and converted the money to a cashier's check made out to Serenity WILLIAMS.  Investigators checked law enforcement databases and found the name "Serenity WILLIAMS" shows up once in the case file, when she traveled on American Airlines between Chicago and Los Angeles (round-trip) with N-namdi, Kayden WILLIAMS, and Damario WILLIAMS.  The trip took place between 11/23/2022 and 11/26/2022.  At the time, Serenity WILLIAMS would have been 14 years old, since her DOB is XX/XX/2008.  (Kayden and Damario are also minors.)

13.     Investigators believe that the juveniles listed above are possibly children of Dominique WILLIAMS and the payment of $25,000 was to be routed through Serentity WILLIAMS and ultimately sent to Dominique WILLIAMS.

14.     N-namdi—in addition to maintaining a premises used by the Williams DTO, alerting his son to law enforcement's activities to facilitate his son's escape, and engaging in financial transactions suspected to be associated with his son's continued evasion of law enforcement—has himself previously been sentenced to 240 months' imprisonment for federal drug trafficking, which was eventually reduced under the First Step Act. *See United States v. Williams*, 07-cr-106, Dkt. No. 26 (E.D. Wis. Jan. 22, 2008).

**<u>TECHNICAL TERMS</u>**

15.     Based on my training and experience, I use the following technical terms to convey the following meanings:

a. Wireless telephone:  A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals.  These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones.  A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone.  In addition to enabling voice communications, wireless telephones offer a broad range of capabilities.  These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet.  Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b. Digital camera:  A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film.  Digital cameras use a variety of fixed and removable storage media to store their recorded images.  Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader.  Removable storage media include various types of flash memory cards or miniature hard drives.  Most digital cameras also include a screen for viewing the stored images.

This storage media can contain any digital data, including data unrelated to photographs or videos.

c. Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected

to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e. PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

16. Based on my training, experience, and research, and from consulting the manufacturer's advertisements and product technical specifications available online, I believe that the Target Device has capabilities that allow it to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

**ELECTRONIC STORAGE AND FORENSIC ANALYSIS**

17.     Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

18.     *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Target Device was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the Target Device because:

a.  Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

b.  Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c.  A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d.  The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process.

Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

    e.   Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

19. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

20. *Manner of execution.* Because this warrant seeks permission to examine a device that will already in law enforcement's possession, the execution of the search of the cellular device does not involve the further physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of this portion of the warrant at any time in the day or night.

21. I know from my training and experience, as well as publicly available materials, that encryption systems for mobile phones and other electronic devices are becoming ever more widespread. Such encryption systems protect the contents of these devices from unauthorized

access by users and render these contents unreadable to anyone who does not have the device's password. As device encryption becomes more commonplace, the encryption systems implemented by device manufacturers are becoming more robust, with few—if any—workarounds available to law enforcement investigators.

22.    I also know that many electronic devices, particularly newer mobile devices and laptops, offer their users the ability to unlock the device through biometric features in lieu of a numeric or alphanumeric passcode or password. These biometric features include fingerprint scanners, facial recognition features, and iris recognition features. Some devices offer a combination of these biometric features, and the user of such devices can select which features they would like to utilize. Therefore, I request that this warrant permit law enforcement agents to obtain from N-namdi the compelled display of any physical biometric characteristics (such as fingerprint/thumbprint or facial characteristics) necessary to unlock any device(s) requiring such biometric access subject to seizure pursuant to this warrant for which law enforcement has reasonable suspicion that N-namdi's physical biometric characteristics will unlock the Target Device.

23.    If a device is equipped with a fingerprint scanner, a user may enable the ability to unlock the device through his or her fingerprints. For example, Apple offers a feature called "Touch ID," which allows a user to register up to five fingerprints that can unlock a device. Once a fingerprint is registered, a user can unlock the device by pressing the relevant finger to the device's Touch ID sensor, which is found in the round button (often referred to as the "home" button) located at the bottom center of the front of the device. The fingerprint sensors found on devices produced by other manufacturers have different names but operate similarly to Touch ID.

24. If a device is equipped with a facial-recognition feature, a user may enable the ability to unlock the device through his or her face. For example, this feature is available on certain Android devices and is called "Trusted Face." During the Trusted Face registration process, the user holds the device in front of his or her face. The device's front-facing camera then analyzes and records data based on the user's facial characteristics. The device can then be unlocked if the frontfacing camera detects a face with characteristics that match those of the registered face. Facial recognition features found on devices produced by other manufacturers (such as Apple's "Face ID") have different names but operate similarly to Trusted Face.

25. If a device is equipped with an iris-recognition feature, a user may enable the ability to unlock the device with his or her irises. For example, on certain Microsoft devices, this feature is called "Windows Hello." During the Windows Hello registration, a user registers his or her irises by holding the device in front of his or her face. The device then directs an infrared light toward the user's face and activates an infrared-sensitive camera to record data based on patterns within the user's irises. The device can then be unlocked if the infrared-sensitive camera detects the registered irises. Iris-recognition features found on devices produced by other manufacturers have different names but operate similarly to Windows Hello.

26. In my training and experience, users of electronic devices often enable the aforementioned biometric features because they are considered to be a more convenient way to unlock a device than by entering a numeric or alphanumeric passcode or password. Moreover, in some instances, biometric features are considered to be a more secure way to protect a device's contents. This is particularly true when the users of a device are engaged in criminal activities and thus have a heightened concern about securing the contents of a device.

27. As discussed in this Affidavit, your Affiant has reason to believe that the Target Device is subject to search and seizure pursuant to the applied-for warrant. The passcode or password that would unlock the Target Device is currently not known to law enforcement. Thus, law enforcement personnel may not otherwise be able to access the data contained within the Target Device, making the use of biometric features necessary to the execution of the search authorized by this warrant.

28. I also know from my training and experience, as well as from information found in publicly available materials including those published by device manufacturers, that biometric features will not unlock a device in some circumstances even if such features are enabled. This can occur when a device has been restarted, inactive, or has not been unlocked for a certain period. For example, certain Apple devices cannot be unlocked using Touch ID when: (1) more than 48 hours has elapsed since the device was last unlocked; or, (2) when the device has not been unlocked using a fingerprint for 8 hours and the passcode or password has not been entered in the last 6 days. Similarly, certain Android devices cannot be unlocked with Trusted Face if the device has remained inactive for four hours. Biometric features from other brands carry similar restrictions. Thus, in the event law enforcement personnel encounter a locked device equipped with biometric features, the opportunity to unlock the device through a biometric feature may exist for only a short time. Due to the foregoing, if law enforcement personnel encounter any device(s) that are subject to seizure pursuant to this warrant and may be unlocked using one of the aforementioned biometric features, the warrant I am applying for would permit law enforcement personnel to obtain from N-namdi the display of any physical biometric characteristics (such as fingerprint/thumbprint or facial characteristics) necessary to unlock any device(s), including to (1)

press or swipe the fingers (including thumbs) of the aforementioned person to the fingerprint scanner of the device(s); (2) hold the device(s) in front of the face of the aforementioned person to activate the facial recognition feature; and/or (3) hold the device(s) in front of the face of the aforementioned person to activate the iris recognition feature, for the purpose of attempting to unlock the device(s) in order to search the contents as authorized by this warrant.

## **CONCLUSION**

29.　I submit that this affidavit supports probable cause for a warrant to search N-namdi Williams' person, further described in Attachment A, for the Target Device described in Attachments A and B, and to further search the Target Device for evidence of the SUBJECT OFFENSES.

# **ATTACHMENT A**

*Person to be searched*

The person of N-namdi Williams, for the phone assigned cellular telephone call number 414.759.8761  (the "Target Device").

*Device to be searched*

The Target Device.

# ATTACHMENT B

*Evidence to be seized*

1.      All records and information on the Target Device described in Attachment A that relate to violations of 21 U.S.C. §§ 841(a)(1), 843, and 846 (distribution of controlled substances; use of a communication facility to facilitate distribution of controlled substances; and conspiracy to distribute controlled substances), and 18 U.S.C. § 1503 (obstruction of due administration of justice) (the "SUBJECT OFFENSES")  and involve N-namdi Williams since March 2023, including:

   a.   Records and information relating to the SUBJECT OFFENSES;

   b.   Records and information relating to firearms purchases, drug purchases and/or firearms/drug trafficking; and,

   c.   Records and information relating to the finances—including but not limited to expenditures, obligations, income, and any financial or monetary transfers—of the Williams DTO.

2.      Evidence of user attribution showing who used or owned the Target Device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

During the execution of the search of the person described in Attachment A, law enforcement personnel are authorized to obtain from N-namdi Williams the compelled display of

2

any physical biometric characteristics (such as fingerprint/thumbprint, facial characteristics, or iris display) necessary to unlock the Target Device, to include pressing fingers or thumbs against and/or putting a face before the sensor, or any other security feature requiring biometric recognition, for the purpose of attempting to unlock the Target Device's security features in order to search the contents as authorized by this warrant.

With respect to the search of the information provided pursuant to this warrant, law enforcement personnel will make reasonable efforts to use methods and procedures that will locate and expose those categories of files, documents, communications, or other electronically stored information that are identified with particularity in the warrant while minimizing the review of information not within the list of items to be seized as set forth herein, to the extent reasonably practicable. If the government identifies any seized communications that may implicate the attorney-client privilege, law enforcement personnel will discontinue its review and take appropriate steps to segregate all potentially privileged information so as to protect it from substantive review.

This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

CLERK'S OFFICE
A TRUE COPY
Oct 31, 2024
s/ D. Olszewski
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

AO 93C  (08/18)  Warrant by Telephone or Other Reliable Electronic Means

❏ Original          ❏ D

# UNITED STATES DISTRICT COURT
### for the
### Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched*<br>*or identify the person by name and address)*<br>the person of N-namdi Williams and the<br>cellular telephone assigned (414) 759-8761 | )<br>)<br>)<br>)<br>)<br>) |

Case No.   24   MJ   241

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:        Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____Eastern_____ District of _____Wisconsin_____
*(identify the person or describe the property to be searched and give its location)*:

See Attachment A,

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B.

**YOU ARE COMMANDED** to execute this warrant on or before _____November 13, 2024_____ *(not to exceed 14 days)*
☑ in the daytime 6:00 a.m. to 10:00 p.m.     ❏ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____Honorable William E. Duffin_____.
*(United States Magistrate Judge)*

❏ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
❏ for _____ days *(not to exceed 30)*     ❏ until, the facts justifying, the later specific date of _____.

Date and time issued:        10/31/2024 at 10:55 a.m.                              *William E. Duffin*
                                                                                              *Judge's signature*

City and state:          Milwaukee, WI                        Honorable William E. Duffin, U.S. Magistrate Judge
                                                                                              *Printed name and title*

| **Return** | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

**Certification**

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

# **ATTACHMENT A**

*Person to be searched*

The person of N-namdi Williams, for the phone assigned cellular telephone call number 414.759.8761  (the "Target Device").

*Device to be searched*

The Target Device.

# ATTACHMENT B

*Evidence to be seized*

1.       All records and information on the Target Device described in Attachment A that relate to violations of 21 U.S.C. §§ 841(a)(1), 843, and 846 (distribution of controlled substances; use of a communication facility to facilitate distribution of controlled substances; and conspiracy to distribute controlled substances), and 18 U.S.C. § 1503 (obstruction of due administration of justice) (the "SUBJECT OFFENSES")  and involve N-namdi Williams since March 2023, including:

   a.   Records and information relating to the SUBJECT OFFENSES;

   b.   Records and information relating to firearms purchases, drug purchases and/or firearms/drug trafficking; and,

   c.   Records and information relating to the finances—including but not limited to expenditures, obligations, income, and any financial or monetary transfers—of the Williams DTO.

2.       Evidence of user attribution showing who used or owned the Target Device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

During the execution of the search of the person described in Attachment A, law enforcement personnel are authorized to obtain from N-namdi Williams the compelled display of

2

any physical biometric characteristics (such as fingerprint/thumbprint, facial characteristics, or iris display) necessary to unlock the Target Device, to include pressing fingers or thumbs against and/or putting a face before the sensor, or any other security feature requiring biometric recognition, for the purpose of attempting to unlock the Target Device's security features in order to search the contents as authorized by this warrant.

With respect to the search of the information provided pursuant to this warrant, law enforcement personnel will make reasonable efforts to use methods and procedures that will locate and expose those categories of files, documents, communications, or other electronically stored information that are identified with particularity in the warrant while minimizing the review of information not within the list of items to be seized as set forth herein, to the extent reasonably practicable. If the government identifies any seized communications that may implicate the attorney-client privilege, law enforcement personnel will discontinue its review and take appropriate steps to segregate all potentially privileged information so as to protect it from substantive review.

This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

3